Final case of the morning is number 1740901, Smith v. Chrysler Group. I'm pretty good with names. I understood that. I don't know what it means, but Van Pembroke means. Yes. Thank you, Your Honor. Thank you. So, I'm Darren Van Pembroke, Your Honors, along with my co-counsel, Rebecca Brightwell, on behalf of Mrs. Smith and her family as the appellants. In our view, there are two principal issues before the court in this appeal. Let me ask you this. If we were to affirm the district court on the issue of excluding the supplemental report, do you have any way to win? Oh, yes. Absolutely, Your Honor. Okay. Maybe you should address that. Thank you. I will. The first question is, is the testimony of Chrysler's engineering employees admitting that the TOC and PST of the Appellant's Jeep violated their own safety spacing requirements and then their further admission that they changed the TOC from steel to aluminum but left that aluminum next to and too close to a steel piece sufficient to create a genuine issue of material fact that the plate of the Jeep was, in fact, defective? The second question is whether multiple points of evidence, including sporadic burn damage along the path of the Jeep, massive burn damage at the base of the pillar, telltale burn damage at the A-pillar of the Jeep, Mr. Smith's… But, I mean, the problem that your own expert until the supplemental report said, you know, I don't really know. I can't really say X. I can't really say Y. They took the truck away. We don't have the Jeep. We don't have the Jeep. You know, whatever. It was kind of equivocal until the supplemental report. So that's why I began my inquiry with that because it seems like absent the supplemental report, you have a pretty vague, squishy sort of expert analysis. Your Honor, you're referring to Mr. Schultz, who was the fire cause and origin expert. We have an automotive engineering expert, Mr. Andrew Webb, who did opine that, for the reasons that I just described, as were admitted by Chrysler's own employees, there was a defect, a spacing defect and a material defect, in the Smith's vehicle, and then described at length his conclusion that those defects caused this crash. How do you know that it was a defect if that suits an automobile? Because it was a design defect, Your Honor. They were all the same design, and that's exactly what Mrs. Frohlich, Deborah Frohlich, testified to. It's a design defect, and I know you've seen some things in the briefs from Chrysler that kind of suggest that we don't know if this one is defective or not. They're all defective, in our view, and that was the opinion of our group. Do we know that other than your speculative view? No, no, sir. It's not my, with all due respect, it's not my speculative view. That's what the Chrysler. Is it or is it a fact? It's a fact. Okay. It's a fact that Chrysler itself has admitted. So the answer to both those questions, we believe, is unequivocally that the Smith family presented more than sufficient evidence to create genuine issues of material fact over defect and causation, and that that compels the reversal of a summary judgment which, of course, was granted on the eve of trial and in a very cursory manner of five pages. With regard to the claim by Chrysler that Deborah Frohlich Okay, is it not true that Webb said that he couldn't point to specific evidence that Arthur's Jeep suffered from the N28 recall defect? I think that was an admission. In the context, the Jeep was, as you may know from the briefs, not available for his inspection, so he couldn't see that. But instead, he relied upon all of the circumstances that I was about to recite to conclude that, in fact, it was his opinion more reasonably than not that the Jeep crashed because of the defect. And that's what experts are supposed to do, and at summary judgment stage, I would submit, Your Honors, the nonmoving party is entitled to all reasonable inferences, and that's exactly what these were. I'll take for an example just to give it a contrast. You've heard Chrysler say a lot about, well, Mr. Smith must have committed suicide. They have no direct evidence of that, right? There's no suicide note. There's nobody who watched Mr. Smith drive directly into the pillar. Instead, they say the circumstances suggest that he may have committed suicide, and on that, we would argue that the circumstances suggest just the opposite. Do you know what the, okay, go ahead. And so one of the very obvious reasons that we state in the brief that we know he wasn't committing suicide, he was wearing a seatbelt. And when the car struck the pillar, it wasn't head on to him. It was on the passenger side. All right, so those are easy, obvious, compelling reasons we know that the theory that Chrysler has put forth does not require the grant of summary judgment. But you can have an undefective vehicle that catches fire in an accident. You can. And so then the issue here is whether the defect, even assuming arguendo that this recall information is good enough, and the district court had doubts about that, you can't assume that because the car has a defect and it ultimately catches fire that the two are linked. You need some evidence on that, and Webb's evidence on that is pretty thin. I would disagree around that. Okay, point me to, can you give me a record site that really punches it out there? Because all these experts are pretty, I don't know, less certain than the experts I used to see when I was a state trial judge. Let's just put it that way. Well, let me back up just for a minute, and I'm not avoiding your question, but Mike Schultz in particular, the fire cause and origin expert, opined that there was a pre-crash fire and that it originated in the very location where the recall failure mode will cause the expulsion of automatic transmission fluid. And that's a key to Mr. Webb's testimony as well, because Mr. Webb then testified, and I'm looking for the citation, Your Honor. If you want to give it to us on rebuttal, you can, unless you've got it right now. Let's see if I've got it right now. I may not have it right now. But what I will tell you, because I've got it in my notes, is what Mr. Webb testified is the sporadic burn damage identified by the eyewitnesses along the path of the grass, Mr. Smith's grossly elevated carboxyhemoglobin levels, and the burn damage at the pillar all supported his conclusion that the recall failure mode in this defective Jeep is what caused this crash. So he does identify those. And so back to Mr. Schultz, if you will, that's another part of our brief. We believe very strongly that the district court abused its discretion when it refused to allow Mr. Schultz to supplement his report after Chrysler, which had been withholding documents for a very long time, was compelled to produce them, including the Wolfgang file. It did so for the reason she concluded, that there was no new evidence to allow them to further your case. Your Honor, there was, among the documents that was withheld by Chrysler and then produced to us, evidence from a family named Wolfgang's same 2013 Jeep Wrangler. And I don't know if you can see these from here, if I could bring them up to the... Just give us a record site and we'll look at it. It's 4262 and 4263. May I hand these to you? Thank you. And Your Honors, those photographs that had been withheld but then produced by Chrysler only after Mr. Schultz's first report was drafted and after Mr. Schultz was deposed, specifically show fire emanating from the very location that it has been conceded where the recall failure mode will produce that fire. And you might recall the other point that was made, and was made by Mr. Schultz as well. But that's not your truck. Of course it's not. It's the same model. It's the exact same model with the same defect. And it's alleged by the Wolfgang family that... But there are no photos of your truck, right? Oh, there are photos. Right after the crash? Yes. And, yeah, there are photos of our truck right after the crash and later. And you might recall that one of those photographs shows a very orange localized area of fire damage. And what Mr. Schultz also said, not in his supplemental report, but in his original report and during his deposition, is that shows me that's the area of origin. Is this picture here supported by testimony that the fire was caused by the defect? There are records produced by Chrysler in which the claimants allege that it was caused by the recall failure mode. That's right, Your Honor. The other piece of this... I guess the problem I have is it does seem like there was extra evidence produced after Schultz's original report. And it also seems like in his supplemental report he doesn't sufficiently tie, I've now changed my mind and I've become less wishy-washy than I was before because of, instead he keeps relating back to, you know, the Zimmer photos and whatever else, that it was all sort of old news. And this is not to take away from, I mean, I'm very sorry for the loss for this family. But as far as the legality and the legal issues we're dealing with, it doesn't seem like he says once I receive this document, you know, 4262, it brought me information I didn't have before that now allows me to go from a maybe, sort of, kind of, to, oh, yes, more likely than not. With all due respect, I believe that's exactly what he did. What he did not do is say what Chrysler produced were tens of thousands of... Mr. Counselor, did Mr. Counselor also hear this picture? Yes, they gave them to us. They finally produced them to us. They came from their files. Chrysler produced tens of thousands of records in response to the motion to compel. What Mr. Schultz said is I've looked at all of that information, and I see that the burn damage on the vehicle and the circumstances around this vehicle is unique. It's not the same as fires caused by other defects or for other reasons. It's caused by this recall failure. Okay, but he doesn't tie those things together. I mean, you know when you're issuing a supplemental report after the deadline for reports, and certainly once a motion is filed to exclude it, you know this is an issue, and it seems like the expert has to say I couldn't have reached this conclusion. I didn't have the information I needed until Bates number 1,000 to 2,000 hit my desk, and in looking at that, I found this pattern. I mean, this is the kind of information, and I know this from having seen it as a judge and, frankly, as a lawyer, and I don't see that here. If I missed it, then please point me to the record, and I'll go back and look at it. And on rebuttal, if I can give you a specific record site, I will. Okay. You've got his supplemental report so you know what it says. I think really what the argument Chrysler's made is, well, why didn't he attach all the documents we produced and point out exactly how each of these changed his opinion? And as I try to articulate, it was by exclusion. It was I've looked at all the other fires. I won't repeat myself. You heard what I said. By the way, Mr. Schultz was never re-deposed, which would have obviously. Okay. There's only so much you can say in a report. But we should focus on the disputes except your argument. I think it's as simple as this. The summary judgment standards, Your Honor, requires that you resolve differences in favor of the non-moving party. The district court judge didn't do that at all. She said there's no evidence of defect. Two is you should focus on the testimony of Mr. Webb, who is an automotive engineer who opined defect and causation and explained his basis for causation. Three, you should look at all the evidence that the plaintiffs put together and the arguments against it. Let's take one example. You're going to hear from Chrysler that the adult children of Mr. Smith went and took some photographs of the grass, and they're going to say those aren't good photographs. We can't see the burn damage. The reality is it's their eyewitness observations that our experts relied upon. So it's a red herring to talk about the photographs. The other is this idea. You should focus on not your own case. No, no. Okay. I'll give you the last one, Judge. Mr. Smith's grossly elevated carboxyhemoglobin saturation levels. It was six times higher than could be accounted for by his modest smoking. There is no evidence in the record that he's— Oh, no, sir. No, sir. He is a very light smoker. You'd have to smoke two packs of cigarettes a day to get anywhere close to the 18% saturation level he had. No, sir. In the speculation you'll hear from Chrysler is, well, maybe he smoked six times as many cigarettes that weekend before the crash. There's no evidence to support that in this record. There's not a receipt. What was his usual habit? A pack or less a day. A pack or less a day. That alone proves that there was the underbody fire along with the location that Mr. Schultz has identified that proves—it doesn't prove. It creates a genuine issue of material fact— that overcomes the concerns raised by the trial court and the arguments made by Chrysler. You know this, and I'll just say it because I think it's very important. We never got our chance to try our case, and we have put forth very substantial evidence by multiple experts, and they're just not our experts. They're the experts that Chrysler designated. They're the coroner who is completely independent. All these things show that we have created genuine issues of material fact that allow us to go to a trial, allow us to go to a jury, and my clients have never had that chance, never had that chance. Whatever Chrysler's view of the evidence may be, whatever their arguments might be, those create factual disputes that don't get resolved in summary judgment. They get resolved at trial, and that's what we'd ask for. All right, so you have time for rebuttal. Thank you. Yep. Nancy, I could pronounce your name, but I have to. Is this Bisha or Bushy? Ryan Boucher, Your Honor. Boucher. May it please the court. That's German to me. Your Honors, given the limited amount of time, my argument today will focus on three of the reasons the district court. You have plenty of time. The district court properly granted summary judgment. And I'm not saying because of your case. 20 minutes is lots of time. I agree with you. Justice Haynes, my first two points go directly to your first question. We're actually judges, but go ahead. Judge Haynes, the first two points go to your first question. If Schultz is excluded, my first point is, Smith's circumstantial evidence was not sufficient to establish defect or causation. Point number two is that the testimony of the accident reconstructionist, Mr. Webb, regarding the spacing between the two metal lines, did not establish defect or causation. And, of course, the third point we'll get to, did the court properly exercise its discretion as to Mr. Schultz? Turning to the first point, the Smiths. But, you know, I understand on causation. But haven't you all established defect by your recall notice and your overall faulty design of this Jeep? No, Your Honor. And there's several points to make on that. The first, we can turn to the recall notice itself. And this is part of my first point, which is circumstantial evidence. That's part of their circumstantial evidence. There's been a lot of argument that, hey, this recall notice said your vehicle had the VIN number. Well, if you look at 49 CFR, Section 577.5B, it mandates, a manufacturer must include the statement, quote, this notice applies to your vehicle and include the VIN. Section 577.8A. But they don't require that you do that for a vehicle it doesn't include. So if you had type A and type B and only type A had the defect, then you don't need to write the type B people. Well, 577.8A does say you need to use the word defect. 577.5D says when a manufacturer determines that the defect may not exist in each such vehicle, it may include an additional statement to that effect, which is what FCA did. It said some vehicles may include this condition. So that's one point. The second point I'll make is that. I mean, it's a little weird to me that Chrysler doesn't know about its own vehicles, whether they were designed with aluminum or something else or whatever. I mean, we're just selling Jeeps, have no idea how they're designed, and this is the designer and the seller and the manufacturer. That's just a little weird to me. It seems like this is a knowable fact that y'all would have a duty to produce. I'm sorry, I don't understand your question. You're saying we don't know if this Jeep had the defect. Well, who the heck is supposed to know? How about the people that designed it and manufactured it and put it out on the street so people could blow up in it? I understand what you're asking. Okay. And so the reason for that is because this condition, which the condition is, the condition is when a steel line rubs with an aluminum line and a leak occurs. And so the subsequent investigation revealed that condition only occurred in 20% of the vehicles. That's number one. The 2012 model, they did durability testing. No leak occurred. The 2013 model was tested. At the end of that test, one of the vehicles developed a leak. Now, there was no fire. There is no evidence in the record that any fire has ever occurred in any vehicle related to this condition. What about this? Well, I can go back to my first point. I am actually surprised that they doubled down on that because that is exactly why circumstantial evidence is not sufficient in this case. The Smiths cited certain documents, not just the Wolfgang documents, related to three other fires that they apparently but mistakenly believed were related to the recall. They were not, and there's conclusive proof in the record on that. On page 16 of their appellate brief, they've incorrectly referred to those fires as other incidents of spacing defect. The most important is obviously the Wolfgang fire. They argue, again, here today but also to the district court. On page 4341, quote, the flames shown in the photographs of the Wolfgang Jeep are impinging the A-pillar on the driver's side in exactly the same location of the unique oxidation caused by the burn damage on the Smiths Jeep. Thus, in fact, there is substantial similarity between the underbody fire experienced by the Wolfgang family's Jeep and the Smiths Jeep. Under tab one of the bench notebook, I've included multiple quotes from the record where they've stated that exact same regarding the similarity between Wolfgang and Smith. On page 22 of their brief, they include the picture of their brief to this court, and they say, the photograph of the Wolfgang family's Jeep suffering the recall failure mode with the expulsion of flames in the same location as the burn damage in the Smiths Jeep is a telltale sign of the recall failure mode. Okay. He is correct. When this fire first occurred, the Wolfgangs did report that they believe, it said, feel is related to the N28 recall. But if you look at pages 4320 to 4323, an affidavit in FCA records confirmed that the permanent recall repairs were performed on this Jeep in October of 2012. The Wolfgang Jeep. Yes, were performed on the Wolfgang Jeep before the Wolfgangs purchased it and before the fire occurred. So not only did the recall not cause it, it couldn't have caused it. The condition didn't even exist on the Jeep. I'll also note that on page 4273, the Wolfgangs eventually reported, quote, my insurance company, along with Chrysler, did a forensic investigation, which came up inconclusive. Under tab, there's other two other incidents. I probably don't have time to get in detail, but what I will say, if you look under tab two, in the briefing, there's been a reference to a fire in China. What the investigation showed, although it was a similar fire, it was a highly modified Jeep. A drive shaft came loose, impacted the transmission and caused a similar fire, not caused by the recall. And then tab three involves a Jeep traveling down the highway, highway speeds, develops a fire, and then is engulfed in flames. Although extremely similar, we know for a fact it was not caused by the recall, because if you look at the records, that was a manual transmission. This recall and this condition only relates to automatic transmissions. So at bottom, these three other similar incidents establish a very, very important point. It shows that other fires, exactly the same as this, by appellant's own admission, exactly the same, can and do occur in Jeep Wranglers that are completely unrelated to the recall. And that is why appellants needed an expert, why the jury needed, why the judge needed an expert who could come in and say, this condition existed on this particular Jeep and this condition caused the fire. Turning to my second, and turning to my second point regarding Mr. West. With respect to that issue, his testimony regarding a lack of adequate spacing between the two lines did not establish an unreasonably dangerous condition, which is what is required under Texas law for a defect. It also didn't establish causation. In that respect, in deposition, when he was cross-examined by the Smith's counsel, Smith's counsel asked, do you have an opinion about whether if the Smith's vehicle contained a rubber elbow, which I haven't discussed in detail yet, but it's in the briefing, a rubber elbow on the steel line, if that vehicle was nevertheless defective? His answer was, quote, it didn't meet their design criteria. It reduced the gap, which was against the guidelines. That's what they now refer to as the spacing defect. However, with the recall, the issue was not the spacing. The history and the record clearly shows that, so let me back up and explain that point. There are two different SCA engineers who provided testimony on pages 4167 and 4354, and they explained that the spacing between those two metal lines was exactly the same between 2007 and 2013. However, between the 2007 model and the 2011 model, both of those lines were made from steel. So as the Smith's explained on page 5 of their brief, quote, FCA guarded against any damage by inadequate spacing between the TOC line and PST line by ensuring that both tubes were made of steel so they could withstand contact. So before 2012, there was that same spacing that Mr. Webb talked about. So it's not defective per se. It's not unreasonably dangerous per se because of spacing between the lines. The potential, the issue that's now before this court really centers on the fact that in 2012, FCA changed one of the lines to aluminum. Sometimes hard contact would occur and a leak would occur. However, after that 2013 durability testing that I referenced, the FCA then came up with the fix, a rubber elbow you would put on the steel line in order to prevent hard contact. If you look at pages 1295 and 2942, the deponent explains, we tested the rubber elbow, and he explains, he was asked, was it reliable and effective? Yes. And he explained when we confirmed it would not create any other issues, we implemented it on 100% of the vehicles beginning on August 22, 2012. That is, the vehicles manufactured on August 22, 2012. If you look at page 3570, and also there's a tab under the bench notebook that establishes all the evidence in the record showing Mr. Smith's Jeep had the rubber elbow. And as FCA's rep explained on page 2969, they included even the Jeeps with the rubber elbow in the recall, quote, out of an abundance of caution, which is I think exactly what the public at large and NHTSA expects and wants from its manufacturers. So considering those facts, the dispositive problem for the Smith is that they aren't able to show that the Jeeps that have the rubber elbow, like the Smith vehicle, were even capable of developing a leak, much less a fire. All of the evidence in the record is that it was effective. So in other words, one of the problems is that no expert, including but not limited to Webb, performed any testing to show that a vehicle with a rubber elbow could develop a leak. He didn't even perform pen-to-paper analysis to determine whether it could develop a leak. And, of course, they didn't identify a single vehicle out in the wild that was equipped with a rubber elbow and still developed a leak. Consequently, Webb's conclusory testimony regarding a lack of spacing is not sufficient to establish an unreasonably dangerous condition. And then as to causation, he testified, quote, that the vehicle caught on fire prior to hitting the pillar and the byproducts of combustion impaired the driver. That's not testimony that defect existed, and it's not a testimony that this alleged defect caused it. So for all the reasons I've already stated, the Smiths cannot establish defect or causation. So that leads me to my final point,  within its discretion when it struck the untimely causation opinion of plaintiff's fire expert that was provided after FCA filed a motion for summary judgment, after FCA filed a motion to strike, and after discovery closed. It was, in fact, included in a response to the summary judgment motion. As the court is aware, there's four factors a district court considers when deciding whether or not to strike an untimely opinion. The only factor the Smiths addressed in the briefing of this court and to the lower court is their explanation. And as you heard today, and this is a really important point to address, they argue that the Smiths, prior to Schultz issuing his first report, that the Smiths repeatedly asked for documents related to other fires in Jeep Wranglers. So that is fires that FCA was able to confirm had nothing to do with the recall, which explains why the Wolfgang Jeep was included in that second set. So they said, prior to him issuing his first report, they requested documents related to other fires, and FCA failed or refused to do so. The record on appeal shows that is just simply not true, and the district court knew it. And if you look under tab six, that includes all the representations to the district court on that issue. What the record shows, if you look at page 3541, is the Smiths served their second set of written discovery, which for the very first time asked for fires related to other Jeeps. On June, in June of 2016, that was one month after Schultz issued his first report. And they had, if they really needed it, which I think the evidence will show they didn't, but if they really needed that information, they had plenty of opportunity to request it. At that point it had been three years since the crash occurred. If you look at page 1691, it shows that at that point it had been two years since the Smiths attorney had hired Mr. Schultz as an expert in this case to go down and do inspections. And it had been one year since the Smiths filed the case. And also I'll note, by the time Schultz issued his first report, the Smiths expert deadline had been extended two separate times for a total of three and a half additional months. You look at Schultz's report, beginning at page 1641. At no point does he indicate in that report that he's unable to reach a causation opinion because he doesn't have records related to other fires. What he does state, seven different times, is that he can't reach it. He doesn't have the vehicle. He doesn't have the vehicle. You look at his deposition on 1691, same thing. It states five times. And it's very, very unfortunate what happened with the vehicle. I'm not attributing that to you all, obviously. No, we strongly believe that this recall didn't have anything to do with it. So we would have loved to conclusively prove that and get rid of this case much earlier. Well, I mean, somebody did die. So, I mean, it is a very sad situation. And you can understand they're seeking justice and an answer. I understand. So are we, Your Honor. The Smiths' motion to compel those other documents related to other fires does not mention anywhere whatsoever that they need them for their expert. And so, you know, although the other factors aren't addressed, but very briefly before I conclude, I'll hit on them. The importance factor, you know, that's the one factor that the district court concluded weighed in their favor. But they argued on page 2904, and they have argued here, hey, it doesn't matter if you strike his opinion. We can still proceed. So that certainly undercuts the importance factor. And then, you know, whether a continuance is available. At that point, the trial date had been continued six separate times for an additional nine months and had been pending for two years and two months. So with all that said, Your Honor, FCA would respectfully request that the summary judgment order be affirmed in its entirety, that other than costs, the other issues be rendered moot. If the court doesn't have any more questions, I'll be seated. Thank you, sir. So you had plenty of time. Okay. Mr. Van Pember. One thing I want to make sure that the record is very clear on is Chrysler was given notice of this crash and Mr. Smith's death years before the car was destroyed. So the claim that Chrysler wanted to go out and look at this and determine what happened is not accurate. They did not follow their own policy of investigating any fatal crash in a recall vehicle. And they did not take advantage of an opportunity that they were entitled to. One other thing I'll mention about that... But the plaintiffs didn't either. The plaintiffs did. Well, we don't have... The experts didn't get to review. I beg your pardon. Mrs. Smith, Your Honor, struggled with GEICO to try to get possession of the vehicle. Okay, and so, again, I'm not... I think this is a third party's fault is what I'm saying. Yeah, but my real point about this is if Chrysler had an opportunity to inspect this very vehicle... to go inspect it as well. I wasn't involved in the case. I don't know what was going on with it. These are people of very limited means. They don't understand the litigation system. Should they have acted more quickly? Perhaps. But the other point I want to make is this idea that we're sort of making up the notion that the recall failure mode can result in a fire. Their recall notice says exactly that. It says that there can be an automatic transmission. Yeah, but how about this thing about it was manufactured after they started with the elbow, the rubber elbow? Yeah. We asked them to produce a bill of materials that showed that the Smith's Jeep had that. They can't do it. They have never produced it. Nobody has testified in this record that they installed such a rubber elbow or that they saw it installed. What about that that was the custom and practice after August 22? That's what they claim, and that's why we wanted to vet that, and that's why there's a... Okay, so despite what I said about you should know what's in the cars you sell, I would imagine that this isn't... and, you know, a bunch of guys sit around and make it and remember it. It's a factory, and a lot of Jeeps are being manufactured. So if they have a custom and practice that as of this date we were doing this, why isn't that sufficient evidence to rely on? Because we created a genuine issue of material fact by asking them to prove what they claimed. There's only testimony that that was their methodology. There's no proof that the elbow was installed on the Smith's car. But let me just get off that for a second. Mr. Wilkinson, FCA's Chrysler's own witness, said the problem with the rubber elbow is it narrowed the gap, and that's why there was still a defect in the car. Mr. Webb said the same thing. The gap was only narrowed by the rubber elbow. Mr. Webb's report or testimony, Your Honor, is at record number 3082 and 4371. Your Honors, I would answer any other questions, but I think it's important, as you asked, Justice, what is important to focus on? And it's really the summary judgment standard here. Have the plaintiff create a genuine issue of material fact. You heard the Chrysler lawyers say, we can't even prove there's a defect when you know the record contains testimony from two Chrysler employees saying, we violated our own safety spacing requirements, and we changed one tube from steel to aluminum, which Mr. Wilkins admitted was a design error, and then also testified that it made the car defective. Yet you're hearing from Chrysler plaintiffs haven't even created a genuine issue of material fact over defect. I would submit that's not credible. With regard to causation, Mr. Webb's testified as an expert. Mr. Schultz has testified importantly about the origin of the pre-crash fire being at the same location as the recall failure mode would occur. And then there are all the additional factors that show that the recall failure mode caused this fire. The sporadic burn damage along the grass, that doesn't happen with a massive failure of a gas tank. It happens when automatic transmission fluid is being expelled. All that proves is that that is consistent with your theory, but I understand Texas law requires expert testimony about the design defect. So you're saying that's satisfied by Weber? It's satisfied by Wilkinson, it's satisfied by Frohlich, and it's satisfied by Webb. Okay. Thank you, Your Honors. All right, thank you both. The court has completed our docket for the week. We will stand and recess.